Argued June 10, 1968 affirmed July 31, 1969

ROBINSON, *Respondent, v.* LEWIS,
*Appellant.*

457 P2d 483

*Frederic P. Roehr,* Portlad, argued the cause for appellant. On the brief were Vergeer, Samuels, Cavanaugh & Roehr.

*Ray G. Brown,* Portland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE[*] and HOLMAN, Justices.

McALLISTER, J.

Defendant appeals from a judgment for plaintiff for injuries sustained while riding in defendant's automobile.

In this court defendant contends that the trial court ered (1) in striking his affirmative defense of contributory negligence based on plaintiff's failure to use an available seat belt and (2) in instructing the jury concerning the basic rule.

Plaintiff's complaint alleged that while he was riding in defendant's automobile defendant permitted the automobile to collide with a guard rail on the west approach to the Ross Island Bridge in Portland. Plaintiff further alleged that the collision was caused by the intoxication and gross negligence of defendant and that plaintiff sustained deep lacerations on his forehead face and neck.

Defendant filed an amended answer which contained the following second affirmative defense:

"That at the time of the collision referred to in plaintiff's complaint, the plaintiff was further guilty of negligence proximately contributing to his own injury and damage, in that he failed to

---

* Denecke, J., did not participate in the decision of this case.

use a seat belt available in the vehicle in which he was riding and furnished for his use."

Plaintiff filed no demurrer or other pleading against the above defense. However, at the outset of the trial plaintiff orally moved the court "to withdrawn from the consideration of the jury" and to strike from the amended answer the affirmative defense, quoted above. The court granted the motion and no evidence was offered concerning the effect of plaintiff's failure to use the available seat belt.

The trial court apparently treated plaintiff's motion to strike the affirmative defense as a demurrer and held, in effect, that the facts alleged did not constitute a defense to plaintiff's complaint. Since defendant has not objected to the manner in which his pleading was challenged, we will assume that the sufficiency of the affirmative answer is properly before us.[1]

Oregon is one of about 32 states[2] that has enacted legislation requiring new automobiles to be equipped with seat belts for the driver and at least one of the passengers riding in the front seat with him. Oregon Laws 1963, ch 315, now codified ORS 483.482–483.488. Our statute has not been amended and applies only to new vehicles sold since November 1, 1964. It contains no requirement that the seat belts be used. In only two states are there statutory requirements for the use of seat belts. Rhode Island requires the drivers of busses and emergency vehicles to wear seat belts and California requires both drivers and passengers

[1] "* * * [T]he proper mode to test the sufficiency of a cause of action or defense is by demurrer." The Victorian, 24 Or 121, 138, 32 P 1040, 41 Am St Rep 838.
See, also, Multnomah County v. Faling, 55 Or 45, 47, 104 P 964.
[2] The states which have passed seat belt legislation are listed in 36 UMKC L Rev 151, 152-153.

in driver-training vehicles to wear seat belts.[9] On the other hand, five states provide, in effect, that the failure to use available seat belts shall not be considered as contributory negligence.[10]

■ Any inference that the legislature, by requiring the installation of seat belts, intended to require that they be used whenever available is, in our view, outweighed (1) by the failure of the legislature to expressly require their use, (2) by requiring seat belts only in new vehicles sold after November 1, 1964, (3) by requiring seat belts only for the driver and one front seat passenger, and (4) by requiring, in 1967,[11] motorcycle drivers and riders to wear protective headgear without making mandatory the wearning of seat belts in automobiles. In the absence of any legislative mandate that the seat belts be used we hold that the failure to wear an available seat belt is not negligence per se. See *Cierpisz v. Singleton,* 247 Md 215, 230 A2d 629 (1967); *Miller v. Miller,* 273 NC 228, 160 SE2d 65 (1968); *Bentzler v. Braun,* 34 Wis 2d 362, 149 NW2d 626, 639 (1967).

The next question is whether the common law imposes a duty to wear an available seat belt. There is considerable evidence that seat belts are effective safety devices and serve to save many lives and minimize many injuries. See the studies referred to in *Bentzler v. Braun,* supra; 16 Am Jur Proof of Facts 351, Seat Belt Accidents § 5, p 359; Roethe, *Seat Belt*

---

[9] Cal. Vehicle Code § 27304 (Supp. 1966); R.I. Gen. Laws Ann. § 31-23-40 (Supp. 1965), Id. at 153, n 7.

[10] Iowa Code Ann. § 321.445 (Supp. 1966); Me. Rev. Stat. Ann. Title 29, § 1368A (Supp. 1966); Minn. Stat. Ann. § 169.685 (4) (Supp. 1966); Tenn. Code Ann. § 59-930 (Supp. 1966); Va. Code Ann. § 46.1-309.1(b) (Supp. 1966), Id. at 153, n 8.

[11] Oregon Laws 1967, ch 393.

*Negligence in Automobile Accidents,* 1967 Wis L Rev 288–292. It is apparent, however, that in spite of an intensive campaign to promote their use, seat belts are not being used by the general public. The 1968 edition of Accident Facts published by the National Safety Council states as follows:

> "Safety belts are now available to about two-thirds of all passenger car occupants, but the belts are being used only about 40 per cent of the time, on the average. As a consequence, the net usage figure—the per cent of all exposure hours during which passenger car occupants are using belts—is estimated to be only about 25 per cent."

Although the statistical studies may indicate otherwise the belief seems to persist that seat belts may increase the hazard in case of accidents resulting in submersion or fire and in some accidents may cause or increase injuries in the abdominal area.

■ Although the public apathy toward the use of seat belts, regardless of the reason, is not controlling⑥ we have concluded, after studying the cases from other jurisdictions and the writings on the subject,⑦ that there is no common law duty to wear seat belts in

---

⑥ Prosser, Torts (3d ed) 168, § 33; 2 Harper & James, The Law of Torts, 902, § 16.2.

⑦ *Should Failure to Wear Seat Belts Constitute a Defense?* 10 Ariz L Rev 523; *Contributory Negligence,* 4 Cal West L Rev 204; *Torts—Contributory Negligence—Failure to Fasten Seat Belts,* 39 U Colo L Rev 605; Kleist, *The Seat Belt Defense—An Exercise in Sophistry,* 18 Hastings L Jnl 613; *Seat Belts and Contributory Negligence,* 28 La L Rev 441; *Negligence: Failure to Use Seat Belts and the Defense of Contributory Negligence: "Does the Reasonable Man Always Buckle Up?"* 21 Okla L Rev 88; *Contributory Negligence for Failure to Use a Seat Belt,* 47 Or L Rev 204; *Seat Belt Legislation and Judicial Reaction,* 42 St. John's L Rev 371; *The Failure to Use Seat Belts as a Basis for Establishing Contributory Negligence, Barring Recovery for Personal Injuries,* 1 San Francisco L Rev 277; Marks, *Does the Failure to Wear Seat Belts Constitute Contributory Negligence?* 540 Ins L Jnl 5.

ordinary vehicular travel. We agree with the well-reasoned opinion in *Miller v. Miller,* supra, in which the other leading cases are reviewed. See also, *Cierpisz v. Singleton,* supra; *Lipscomb v. Diamiani* (Del, 1967) 226 A2d 914; *Brown v. Kendrick* (Fla, 1966) 192 S2d 49; *Robinson v. Bone,* 285 FS 423 (D. Or. 1968).

■ There is indication that the lap belt is not the ultimate or even the best device now available for the protection of the motorist. It further appears that science and industry are continuing their effort to develop more effective means of preventing and minimizing injuries resulting from motor vehicle accidents. We think the task of investigating and testing the utility of safety devices and of determining when their use should be made mandatory can best be performed by the legislature. In view of the rapid developments in this field we might be mandating the use of an obsolete device. We prefer at this time to leave this problem to the legislature which can hold hearings, consider expert opinion, analyze empirical data and exercise an informed legislative judgment.

Defendant's second assignment of error challenges the following portion of the court's instruction with regard to the basic rule:

"* * * Nor shall any person drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or stop as may be necessary to avoid a collision in connection with the use of the highway and in the operation of the motor vehicle. * * *"

Defendant objected to the above paraphrase of ORS 483.102(2)[9] because the court did not limit de-

---

[9] "No person shall drive at a speed which is greater than will permit the driver to exercise proper control of the ve-

fendant's duty to avoid collisions to those collisions involving any "person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care."

■ We think the portion of ORS 483.102 (2) quoted in the preceding sentence is an expression of the rule that a driver is not required to anticipate negligence on the part of other persons lawfully using the highway and was not applicable to a collision of defendant's vehicle with the guardrail. The alleged error excepted to, however, of not referring to the inapplicable portion of the statute was, at most, technical and certainly not prejudicial. *Phillips v. Ocker*, 250 Or 30, 440 P2d 365 (1968). Defendant did not except on the ground that ORS 483.102 (2) does not apply to a collision with an inanimate object and we decline to consider that question in this case.

The judgment is affirmed.

-------------------

hicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care."