[No. 41802.    En Banc.    January 14, 1972.]

LAWRENCE DERHEIM, *Respondent,* v. N. FIORITO CO., INC., *Appellant.*

*Hugh A. Knapp* and *Knapp & O'Dell* (*John C. Beatty, Jr., David P. Templeton, Robert E. Glasgow,* and *Dusenbery, Martin, Beatty, Bischoff & Templeton,* of counsel), for appellant.

*John L. La Londe* (of *Boettcher, La Londe, Kleweno, Lodge & Ladley*), for respondent.

HUNTER, J.—The plaintiff, Lawrence Derheim (respondent), recovered a jury verdict for personal injuries incurred in a collision with a dump truck owned by defendant, N. Fiorito Company, Inc. (appellant), and operated by defendant's employee. Defendant's appeal to Division 2 of the Court of Appeals was certified to this court. Specifically, the so-called "seat belt defense" is a principal issue in the case, and as this court has not addressed itself to the appropriateness of this defense in automobile litigation, the Court of Appeals concluded that a fundamental issue of broad public interest is presented.

The facts are as follows. On June 6, 1968, defendant construction company was engaged in performance of a highway improvement contract on a section of Interstate Highway 5 from Burnt Bridge Creek north to the Ridgefield junction, a distance of approximately 14 miles. The actual work was being performed by the defendant north of the 134th Street exit, approximately 5 miles north of Vancouver, Washington. Trucks were being loaded with dirt at a point approximately 1 mile from the 134th Street off ramp, and were then directed to proceed south along Interstate 5 to the off ramp, down this 2-lane ramp roadway, under Interstate 5 for several hundred feet at which point they were to turn left across the end of two lanes of old Highway 99 (which two lanes joined the 2-lane off ramp at that point), and across 15 feet of grass median to a

parallel on ramp. At that point they turned north on the on ramp for approximately 600-800 feet to a dump area.

At approximately 1:20 in the afternoon, plaintiff, driving his 1959 Chevrolet in a southerly direction on Interstate 5, proceeded down the off ramp behind defendant's dump truck at a lawful rate of speed. Just north of the underpass, a sign stating "End of Construction" was erected facing southbound traffic. The facts are in dispute as to whether two additional signs (one on each side of the roadway) stating "Truck Crossing" were in place south of the underpass and approximately 500 to 600 feet north of the impact area.

The impact occurred when plaintiff, overtaking the defendant's truck, struck the left front of defendant's truck which was engaged in a left-turn maneuver preparatory to crossing the two lanes of old Highway 99 to reach the on ramp. There seems to be no dispute but that defendant's truck commenced its left turn from the right lane, swinging over to the right-hand shoulder of the road and back across both lanes to the left, or inside lane, at which point the impact occurred. The testimony conflicts as to whether or not the truck's left turn signal was on. Plaintiff received a fracture of his right kneecap and injury to his mouth.

Defendant assigns error to the giving of numerous instructions based upon the rules of the road, and the failure to instruct, under RCW 46.61.030 as it existed prior to amendment in 1969, that the rules of the road were inapplicable and only ordinary care need be exercised.

In particular, the court, by appropriate instructions, advised the jury that it is unlawful to turn from a direct course of travel or to move to the right or left upon a roadway unless such movement can be made with safety (RCW 46.61.140(1) and 46.61.305(1)); that a driver must look to the rear prior to signaling for a turn to ascertain that such a turn can be made with safety (*Socony Mobil Corp. v. Forbes*, 64 Wn.2d 369, 391 P.2d 971 (1964)); that one driving on a divided highway may not cross the divider or dividing space unless directed or permitted by official

control devices or police officers (RCW 46.61.150); that before turning, the operator of a motor vehicle must signal his intention to turn not less than 100 feet prior to commencement of turn (RCW 46.61.305(2)); and that one intending to turn from a 2-lane 1-way roadway must approach the intended point of left turn in the extreme left-hand lane (RCW 46.61.290(3)).

■ If the rules of the road apply, the instructions given were correct. If not, defendant's proposed instructions, based upon RCW 46.61.030, and providing for a duty of ordinary care only, should have been given. The wording of RCW 46.61.030 in effect at the time of the accident is as follows:

> Unless specifically made applicable, the provisions of this chapter except those contained in RCW 46.61.500 through 46.61.520 shall not apply to persons, teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work.

This statute, by its terms, provides an exception to the rules of the road applicable to vehicular traffic on the roads and highways, allowing highway construction and maintenance work to proceed without public vehicular interference. In using the expression "work upon the surface of the highway" and in excepting therefrom travel to and from the work area, it is apparent that the legislature was concerned with the movement of equipment and vehicles within the construction site area but was not excepting traffic traveling to and from the construction site. Here the vehicular traffic departing Interstate 5 on the 134th Street off ramp, was advised that they were leaving the construction area by the sign "End of Construction". Under these circumstances, the presence or absence of "Truck Crossing" signs further down the highway, with their dubious effectiveness in warning motorists that some 500 to 600 feet beyond, a truck traveling in the right-hand lane might be expected to turn abruptly broadside across the left-hand

lane, would not tend to establish exemption from the rules of the road under the statutory provision.

With regard to the possible superfluity of the trial court's instruction No. 13[1], set forth in footnote below and based upon RCW 46.61.295, we note that while the defendant would have us interpret this so-called U-turn statute as applying only when one changes direction in the same roadway, the harm or danger which this statute is concerned with is equally existent in a change of direction maneuver such as was attempted here. The court also takes judicial notice that "No U-Turn" signs are posted along divided portions of Interstate 5 prohibiting vehicles from reversing direction by crossing the grass divider from one roadway to another. The truck driver testified that his turn maneuver was one continuous turn to the left, as sharp as the truck turning radius would permit, so as to proceed in the opposite direction on the adjoining on ramp. We cannot see how the jury could have been misled by this statute and accordingly find no error in the giving of instruction No. 13.

While principally taking the position that the rules of the road were not applicable, the defendant also assigns error to the trial court's refusal to instruct the jury that a driver turning to the left may lawfully use such portion of the highway as may be necessary to make an intended left turn. Defendant bases this contention upon a rule of the road, RCW 46.61.290(3), as follows:

Left turns on other than two-way roadways. At any intersection where traffic is restricted to one direction on one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of

[1]Instruction No. 13: "The laws of the State of Washington provide that no vehicle shall be turned so as to proceed in the opposite direction upon any curve, or on the approach to or near the crest of a grade where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within five hundred feet within a residence or business district, and within one thousand feet in all other directions."

travel of such vehicle and after entering the intersection the left turn shall be made so as to leave the intersection, as nearly as practicable, in the left-hand lane lawfully available to traffic moving in such direction upon the roadway being entered.

Defendant misinterprets the statute. The accident site herein was not an intersection, and any degree of variance in making a turn is allowed with reference to the roadway being entered rather than the roadway from which the turn is commenced.

■ We therefore turn to the principal issue for consideration in this case. This issue was presented to the trial court in the following manner. Shortly before the trial commenced, defendant filed an amended answer raising the issue of contributory negligence on the part of the plaintiff for failure to wear an available seat belt and to sound the horn. The trial court allowed the amendment insofar as the horn was concerned, but denied the portion relating to the seat belt issue. In addition the trial court ruled, on plaintiff's motion in limine, that during the trial the defendant was prohibited from making any reference to plaintiff's failure to wear a seat belt. These pretrial rulings are assigned as errors. Specifically, defendant asserts that the plaintiff's failure amounted to contributory negligence, or in the alternative, that evidence should have been admitted in mitigation of damages or in proof of an avoidable consequence.

By way of offer of proof, defendant offered plaintiff's admission that his 1959 Chevrolet was equipped with seat belts and that he was not wearing one at the time of the accident. The defendant offered testimony of Dr. William Snell, physician and surgeon in charge of the Department of Orthopedics at the University of Oregon Medical School, to the effect that plaintiff's knee injury would not have been sustained if his seat belt had been properly fastened. In response to a hypothetical question which assumed the relevant facts, including the use of a properly buckled seat strap, the doctor testified as follows:

A. Fine. Then my opinion is that he would not have sustained this knee injury had the seat belt been properly fitted. Q. Can you explain that? A. Yes, this is —as I mentioned previously, is a very common injury, automobile injury, with deceleration from the automobile striking something in front of it, and the passenger goes forward, and he's in a semi-sitting position, and the first thing that arrests him is when his knee hits the dash. If the force then is sufficient the next thing will usually be his head comes forward and hits either the wheel, or the windshield. And again depending upon the force, that may be the extent of it, or if it's more extensive he may go right on out the windshield. People that have—that wear seat belts do sustain injuries that are rather peculiar to them, but they are usually not severe, and as a result you can sort of catalog patients with this particular injury depending upon whether they are wearing seat belts or not.

We are thus called upon to determine the rule in this state with respect to the so-called "seat belt defense". No subject in the field of automobile accident litigation, with the possible exception of no-fault insurance, has received more attention in recent years than has the seat or lap belt defense. The question being one of first impression in this state, we have reviewed the published material extensively, concluding that while the research and statistical studies indicate a far greater likelihood of serious injuries in the event of nonuse, nevertheless the courts have been inconsistent in their handling of the defense.[2] This inconsistency seems to result from the fact that the defense does not fit conveniently into the familiar time-honored doctrines traditionally used by the courts in deciding tort cases. Thus,

[2]A complete list of cases dealing with the seat belt defense is found in a symposium on the seat belt defense reported in 53 Marq. L. Rev. 172, 226 (1970). To this list we would add the most recent cases, following in alphabetical order: *Britton v. Doehring,* 286 Ala. 498, 242 So. 2d 666 (1970); *Clark v. State,* 28 Conn. Supp. 398, 264 A.2d 366 (1970); *D. W. Boutwell Butane Co. v. Smith,* 244 So. 2d 11 (Miss. 1971); *Dziedzic v. St. John's Cleaners & Shirt Laund., Inc.,* 53 N.J. 157, 249 A.2d 382 (1969); *Estate of Abrams v. Woods,* 64 Misc. 2d 1093, 316 N.Y.S.2d 750 (1970); *Genger v. Campbell,* 256 Ore. 67, 469 P.2d 776 (1970); *Henderson v. United States,* 429 F.2d 588 (10th Cir. 1970);

the conduct in question (failure to buckle up) occurs *before* the defendant's negligence, as opposed to contributory negligence which customarily is thought of in terms of conduct contributing to the accident itself. While more precisely, contributory negligence is conduct contributing, with the negligence of the defendant in bringing about the plaintiff's harm, it is a rare case indeed where the distinction need be made. Furthermore, while states with comparative negligence do not have the problem to the same extent, contributory negligence in many states (such as Washington) is a complete bar to any recovery by a plaintiff—an obvious unjust result to apply in seat belt cases. The same result would be reached if the defense were presented in terms of assumption of risk, that is, that one who ventures upon the highway without buckling up is voluntarily assuming the risk of more serious injuries resulting from a possible accident proximately caused by the negligence of another.

The doctrine of avoidable consequences has been suggested as a possible solution to this conceptual dilemma, but here again, the problem is one of appearing to stretch the doctrine to fit an unusual fact pattern. As a legal theory, avoidable consequences is closely akin to mitigation of damages, and customarily is applied when plaintiff's conduct *after* the occurrence fails to meet the standards of due care. Moreover, courts have traditionally said that a defendant whose negligence proximately causes an injury to plaintiff, "takes the plaintiff as he finds him."

The practical implications of allowing seat belt evidence, has also given the courts pause. For example, most automobiles are now manufactured with shoulder straps in addition to seat belts, and medical evidence could be anticipated in certain cases that particular injuries would not have

*MacDonnell v. Kaiser*, 68 D.L.R.2d 104 (1968); *Miller v. Haynes*, 454 S.W.2d 293 (Mo. App. 1970); *Petersen v. Klos*, 426 F.2d 199 (5th Cir. 1970).

An even longer list of annotations and recent articles on the seat belt defense is contained in an appendix bibliography commencing on page 227 in the above referenced law review article.

resulted if both shoulder belts and seat belts had been used. Additionally, many automobiles are now equipped with headrests which are designed to protect one from the so-called whiplash type of injury. But to be effective, its height must be adjusted by the occupant. Should the injured victim of a defendant's negligence be penalized in ascertainment of damages for failure to adjust his headrest? Furthermore, the courts are aware that other protective devices and measures are undergoing testing in governmental and private laboratories, or are on the drawing boards. The concern is, of course, that if the seat belt defense is allowed, would not the same analysis require the use of all safety devices with which one's automobile is equipped. A further problem bothers the courts, and that is the effect of injecting the seat belt issue into the trial of automobile personal injury cases. The courts are concerned about unduly lengthening trials and if each automobile accident trial is to provide an arena for a battle of safety experts, as well as medical experts, time and expense of litigation might well be increased.

These problems, legal and practical, are found in reviewing the most recent cases decided by other jurisdictions confronting the issue. In 1966, the Supreme Court of South Carolina held in *Sams v. Sams*, 247 S.C. 467, 148 S.E.2d 154 (1966), that a defendant should be allowed to prove, if he can, that the failure of the plaintiff to use a seat belt under the facts and circumstances of the case amounted to a contributing cause of plaintiff's injuries, as opposed to the trial court's striking of the defense simply on the pleadings. The following year, the Supreme Court of Wisconsin in *Bentzler v. Braun*, 34 Wis. 2d 362, 149 N.W.2d 626 (1967), concluded that there is a common law duty to use available seat belts, and that where credible evidence is presented by one qualified to express the opinion of how the use or nonuse of seat belts would have affected the particular injuries, the jury should be instructed in this regard.

In 1968, the Supreme Court of North Carolina decided a leading case in this area, *Miller v. Miller*, 273 N.C. 228, 160

S.E.2d 65 (1968).. There, the plaintiff, a passenger, sued the driver for personal injuries incurred when the car negligently left the road. The defendant, asserting that plaintiff failed to buckle an available seat belt which, if buckled would have prevented the injuries, alleged no unusual circumstances prior to the accident which created any hazard over and above the ordinary risks incident to highway travel. The court held that, since there is no statutory or common law duty to wear seat belts in routine travel, the defendant had alleged no facts which would constitute contributory negligence or breach of the duty to minimize damages. Also in 1968, the Supreme Court of Oregon reached the same result, deferring to its legislature to resolve the question of whether or not available seat belts should be worn. *Robinson v. Lewis,* 254 Ore. 52, 457 P.2d 483 (1968).

In 1969, the New Jersey Supreme Court in *Dziedzic v. St. John's Cleaners & Shirt Laund., Inc.,* 53 N.J. 157, 249 A.2d 382 (1969), only tangentially touching upon the seat belt issue with reference to a passenger who was standing in a delivery truck at the time of a collision, expressly refused to decide if a reasonable man would fasten an available seat belt, but based its holding on the lack of evidence of causation of injury sustained by such omission.

In 1970, the Alabama Supreme Court, after a detailed analysis of the case law to date, held that evidence of failure to wear available seat belts is inadmissible to mitigate damages or in proof of avoidable consequences, and that the admission of the evidence was tantamount to the adoption of comparative negligence. The court was careful to point out, however, that it was not faced with, and actually was reserving its decision on, the question of whether nonuse of seat belts may constitute contributory negligence, since the case was tried solely on a wanton negligence theory. *Britton v. Doehring,* 286 Ala. 498, 242 So. 2d 666 (1970).

The Supreme Court of Mississippi held in 1971, in a case where the defense was raised but no evidence introduced as

to whether or not the use of a seat belt would have affected the injuries received, that the plaintiff was not guilty of comparative negligence as a matter of law for failure to avail herself of an available seat belt, and the question was properly kept from the jury by the trial court. *D. W. Boutwell Butane Co. v. Smith,* 244 So. 2d 11 (Miss. 1971).

The same divergence of approach is noted in law review articles and texts. *See* 47 Ore. L. Rev. 204, 213 (1968); 10 Ariz. L. Rev. 523, 535 (1968); and 38 Fordham L. Rev. 94, 103 (1969). *Also see* W. Prosser, Handbook of the Law of Torts, 423 (4th ed. 1971); 2 Restatement (Second) of Torts § 465 (1965).

We believe the cases in those jurisdictions rejecting the "seat belt defense" are the better reasoned cases. It seems extremely unfair to mitigate the damages of one who sustains those damages in an accident for which he was in no way responsible, particularly when, as in this jurisdiction, there is no statutory duty to wear seat belts.

Moreover, in the state of Washington the installation of seat belts is required only in cars sold in this state manufactured after 1964. RCW 46.37.510. The problem of unequal treatment of owners and occupants of motor vehicles immediately arises. To charge a person with negligence for failure to wear an available seat belt and thereby require a mitigation of his damages resulting therefrom, would constitute preferential treatment to owners of vehicles who failed to have their cars equipped with seat belts, and passengers who knowingly entered cars not equipped with seat belts who sustained injuries. Under the proposed rule, no mitigation of their damages resulting from their failure to wear seat belts would be required. The resolution of this problem encompasses the legislative judgment of whether all vehicles on the roads or highways should be equipped with seat belts.

In addition, the state of Washington has not adopted the doctrine of comparative negligence. As viewed by the court of Alabama, *Britton v. Doehring, supra,* the admission of evidence on the "seat belt defense" issue is tantamount to

adopting the rule of comparative negligence. *Also see D. W. Boutwell Butane Co. v. Smith, supra.* This poses a question of a change in public policy as to the doctrine of comparative negligence, which issue is not properly before us in this case.

For the reasons heretofore stated, we believe the trial court was correct in refusing admission of evidence on the "seat belt defense."

The judgment of the trial court is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, and WRIGHT, JJ., concur.

NEILL, J. (concurring)—I have not subscribed the majority opinion due to reservations about some of the language employed therein. My concern is that the majority opinion, broadly read, could be taken as relieving a plaintiff from any legal consequences of a breach of his own duties of self-protection, even when such results in an apportionable exacerbation of the harm suffered in an accident, so long as that breach is not a contributing cause of the accident. I am not at all convinced that such a position would be correct; and I do not think it necessary to reach that point in disposing of this appeal.

I concur in the result of the majority opinion because, as noted by the majority, the legislature has not seen fit to impose an affirmative duty to wear seat belts. And I am not prepared to declare a common law duty to wear seat belts while traveling in motor vehicles. Therefore, I agree with the affirmance on the basis that a failure by plaintiff to wear a seat belt would not, in the present state of things, amount to a breach of his duty to exercise reasonable care in his own behalf.

STAFFORD, J., concurs with NEILL, J.