Argued and submitted October 8, reversed and remanded to circuit court for new trial
December 30, 1987, reconsideration denied February 9, 1988

DAHL,
*Respondent on Review,*

*v.*

BAYERISCHE MOTOREN WERKE (BMW) et al,
*Petitioners on Review.*

(CC A8207-04151; CA A36181; SC S33946)

748 P2d 77

Roger K. Stroup, Portland, argued the cause for petitioners on review. With him on the petition were E. Richard Bodyfelt and Bodyfelt, Mount, Stroup & Chamberlain, Portland.

Robert K. Udziela, Portland, argued the cause for respondent on review. With him on the response to the petition were Dan O'Leary and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

David Gernant, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Robert H. Fraser, of Luvaas, Cobb, Richards & Fraser, P.C., Eugene, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

Malcolm E. Wheeler, of Skadden, Arps, Slate, Meagher & Flom, Los Angeles, California, and Ridgway K. Foley, Jr., of Schwabe, Williamson & Wyatt, Portland, filed a brief on behalf of *amici curiae* Product Liability Advisory Council, Inc., and Motor Vehicle Manufacturers Association of the United States, Inc.

JONES, J.

## JONES, J.

The question presented by this case is whether a defendant in an automobile products liability "crashworthiness" action can introduce evidence that the plaintiff's failure to secure himself with an operable safety belt caused or contributed to plaintiff's injuries. The trial court refused to allow such evidence to be submitted to the jury. The Court of Appeals affirmed. *Dahl v. BMW,* 84 Or App 483, 734 P2d 387 (1987). We reverse and remand the case for a new trial.

Early on the morning of August 6, 1980, plaintiff, Joseph Dahl, was driving through the suburbs of southwest Portland in his 1976 BMW, manufactured by defendant. Plaintiff lost control of his vehicle, which spun around, skidded up the road and then crashed into a fire hydrant and a fence. Plaintiff, who had failed to fasten his safety belt, was thrown from the car and trapped beside the rear of the car by a part of the fence. The cap on the gas tank at the rear of the car was dislodged by the force of the crash, causing some gasoline to spill out of the car's filler pipe. This spilled gas ignited, burning plaintiff. Plaintiff filed a complaint for damages, alleging that the gas tank cap was defective.

Defendant filed an affirmative answer to plaintiff's complaint, alleging:

> "At the time of the said upset and collision described in paragraph II of plaintiff's Sixth Amended Complaint, plaintiff was at fault and negligent, and engaged in causing or contributing to the accident, upset and collision and plaintiff's resulting damage and injury in one or more of the following particulars:"

After setting forth six allegations charging plaintiff with negligent operation of the vehicle, defendant alleged:

> "(7) In operating said motor vehicle without utilizing the seatbelts installed in said vehicle, and in failing to fasten and secure said belts while operating said motor vehicle."

On plaintiff's motion, the trial court struck this seventh allegation. Nevertheless, defendant made an offer of proof that plaintiff's vehicle was equipped with a shoulder belt and waist belt, that they were operational, and that he was not using them. Plaintiff stipulated that defendant's accident reconstruction expert would have testified that plaintiff would

not have been injured in this accident if he had been wearing his seat belt. The case was tried before a jury, which returned a verdict in plaintiff's favor finding BMW's vehicle defective, contributing 60 percent to the cause of plaintiff's injury, and the plaintiff's negligence contributing 40 percent to the cause of his injury. Defendant appealed, assigning as error the trial court's striking of the seat belt comparative fault allegation and refusing to allow the jury to consider its offered evidence as a failure of plaintiff to mitigate damages or as contributory fault. The Court of Appeals affirmed, holding that "the 'accident,' which in a crashworthiness case is not the crash itself but the failure of the vehicle to withstand the crash, was the escape of gasoline, which then caught fire. Plaintiff's failure to buckle up did not cause the fire." 84 Or App at 485. Based on that reasoning, the Court of Appeals held that the failure to wear a seat belt did not contribute to the accident and, therefore, the question of plaintiff's failure to wear a seat belt was properly stricken.

■  As explained by the Court of Appeals, crashworthiness cases are sometimes referred to as secondary impact cases because the defendant's liability is not based on the initial crash but on the alleged failure of the defendant to protect the occupants from the consequences of the crash. *See also Larsen v. General Motors Corp.,* 391 F2d 495 (8th Cir 1968). The defendant's alleged failure is the failure to anticipate this category of injuries and design the vehicle to protect the occupants from these injuries. In such crashworthiness cases the defendant is liable only for the injuries resulting from faulty protection. *See, e.g., Wilson v. Piper Aircraft Corporation,* 282 Or 61, 577 P2d 1322 (1978); *McMullen v. Volkswagen of America,* 274 Or 83, 545 P2d 117 (1976).

■  The language of negligence and fault that accompanies comparative fault analysis too often leads to the misimpression that for a comparative fault defense to succeed, the defendant must show that the plaintiff's actions contributed to an accident, by which is meant a collision in an automobile case, rather than the sum total of events which resulted in the plaintiff's injuries. This view misinterprets Oregon's comparative fault law.

■  ORS 18.470[1] changes the focus of comparative fault

---

[1] ORS 18.470 provides:

   "Contributory negligence shall not bar recovery in an action by any person or

from the question of liability under traditional contributory negligence law to a focus on the plaintiff's damages. It is not necessary for a defendant to plead or show that the plaintiff had a duty to the defendant or any third party before the defendant can make a comparative fault argument. It is also not necessary that the plaintiff's actions contribute to the collision before they can be considered as part of a defense of comparative fault. ORS 18.470 is concerned with "damages for death or injury." In an automobile case, ORS 18.470 does not affect responsibility for an auto collision, but the "damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering." Further, ORS 18.470 applies in product liability claims as well as negligence claims.

> "ORS 18.470 applies to products liability claims * * * when both the product defect and the claimant's conduct that is alleged as fault in fact joined to cause an unsegregated injury. * * * When ORS 18.470 applies, it calls for the factfinder to assess the relative magnitude of the fault charged against each party as measured against the respective governing norm, the degree to which a product is defective against what would be an adequately safe product, and the plaintiff's misconduct against what would be faultless conduct." *Wilson v. B.F. Goodrich,* 292 Or 626, 629, 642 P2d 644 (1982) (citations omitted).

In other words, a defendant can plead contributory fault and produce evidence to show that the plaintiff took some action or failed to take some action which a reasonable person could have foreseen would increase the risk of harm to the plaintiff, and that the plaintiff did indeed suffer harm of the type which could have been foreseen under ORS 18.470.

We turn directly to the question of whether a plaintiff's failure to use an installed, operable safety belt and testimony concerning the effect of this failure on the plaintiff's total injuries can be a matter for the trier of fact to weigh in its apportionment of responsibility for the plaintiff's injuries. In

---

the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense."

*Robinson v. Lewis,* 254 Or 52, 56-57, 457 P2d 483 (1969), this court concluded "that there is no common law duty to wear seat belts in ordinary vehicular travel." Recently this court has had occasion to examine the weaknesses inherent in such "no duty" conclusions. *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 734 P2d 1326 (1987); *Kimbler v. Stillwell,* 303 Or 23, 734 P2d 1344 (1987); *Donaca v. Curry Co.,* 303 Or 30, 734 P2d 1339 (1987). Invoking "no duty" to justify not submitting a question to the jury states a conclusion without application to the present facts. When a court concludes that there is "no duty" without reference to a particular status or relationship or legal definition, the court has concluded that a reasonable response to a foreseeable injury would never include the acts which allegedly contributed to the plaintiff's injuries.

The conclusion in *Robinson* is an example of the weakness of most contemporary discussions of "duty." After recognizing that seat belts are often effective in preventing injury and recognizing that perhaps as many as 40 percent of drivers and passengers regularly used seat belts, the *Robinson* court went on to conclude that there was no common law duty to wear seat belts.

The original idea of "duty" as a label for a method of determining the boundaries of liability in a particular case has been transformed into an automatically recited formula which obscures rather than encourages consideration of the facts in a given case. It is this use of the term which we disapproved in *Fazzolari* and the companion cases. Changing the focus to the question of reasonable conduct in light of foreseeable risks serves to return the courts and the parties to the proper analysis. Certainly this change in focus does not suggest that the old notion of a responsibility to take care has been excised from tort analysis. Plaintiffs still must act reasonably to take care of themselves or be subject to defendants' charge of failure to avoid or reduce injuries. These general statements, however, cannot serve as solutions for particular cases. In any given case the proper question is whether there was a foreseeable generalized risk of the type of incident and injuries that occurred. *Fazzolari,* 303 Or at 21. In the present case the question is not whether the plaintiff owed the defendant or any other party a duty to buckle up. The proper question is whether the facts of this case indicate that the plaintiff's

"conduct unreasonably created a foreseeable risk to [his] protected interest of the kind of harm that befell the plaintiff." *Id.* at 17.

■    Under all but the most unusual factual situations, disputes over actual or perceived effectiveness of actions or devices which might have prevented injury are not to be determined as a matter of law. Such a proposition is an "empirical statement, which unfortunately is not the rule for all times or places. It is subject to demonstration of what actual circumstances were or should have been contemplated by the [plaintiff]." *Kimbler v. Stillwell, supra,* 303 Or at 28.

■    Therefore, unless the defendant is unable to produce any evidence to show that some portion of the injuries for which plaintiff is seeking recovery were caused by the plaintiff's failure to use available safety belts, such pleadings should not be stricken. Under most circumstances, the defendant should be allowed to present evidence and make arguments to the jury that the plaintiff's failure to use a seat belt, or more accurately, a "safety" belt, was one cause of plaintiff's injuries. In turn, plaintiff should be allowed to present any conflicting evidence. The trier of fact then determines if the plaintiff's failure to use a safety belt caused or contributed to plaintiff's injuries and, if so, the extent of plaintiff's injuries which were caused or exacerbated by this failure to use a safety belt.

■    Courts often make general statements that a plaintiff "owes no duty" in some cases because the plaintiff is under no duty to anticipate another's negligence. *See, e.g., Miller v. Miller,* 273 NC 228, 160 SE2d 65 (1968) (relied on by this court in deciding *Robinson v. Lewis, supra).* Such reasoning demonstrates the failure of analysis when courts focus on the collision rather than the injury. The doctrine of "no anticipation" is also contrary to Oregon law. In *Cutsforth v. Kinzua Corp.,* 267 Or 423, 430, 517 P2d 640 (1973), this court held that traffic hazards exist, "and the reasonable, prudent man accepts and guards against [them] although he may not find it to his liking." Anticipation of the dangers which are a part of driving on Oregon's roads is a "part of the uniform standard of behavior by the hypothetical reasonable, prudent man." *Id.* Automobile collisions are a foreseeable general type of risk resulting in injuries in most highway situations; therefore,

whether the plaintiff's actions in not buckling up were reasonable in light of the foreseeability of an accident is, absent exceptional circumstances, a question for the trier of fact to determine.

■ The test of reasonableness is properly left for the factfinder, because it usually involves an assessment of all the facts leading up to the injury and a determination which factors played some role in causing the injuries suffered by a plaintiff. Whether the plaintiff, as an individual, acted reasonably in not fastening his safety belt, whether this action contributed to the plaintiff's injuries, and what portion of plaintiff's injuries were caused by this failure are factual questions, better answered by the trier of fact after hearing the evidence than decided as a matter of law by a judge prior to trial.

The parties debate what effect the proposed statute referred to the people for a vote in November 1988 should have on our decision.[2] The statute, if passed, would mandate that all drivers and passengers in Oregon must use safety belts. The law would also contain a provision to the effect that evidence of a violation of the statute would not be admissible in any civil action. We conclude that the presence of the referendum should have no effect on our present decision. If

---

[2] This issue was one of several issues raised by questions which the court submitted to the parties. These questions were:

"(1) Does the 'Fazzolari Trilogy' (*Fazzolari v. Portland Public School District No. 1J*, 303 Or 1 (1987); *Kimbler v. Stillwell*, 303 Or 23 (1987); and *Donaca v. Curry County*, 303 Or 30 (1987)), regarding fault determination based on a foreseeability analysis, apply to this case: If so, how?

"(2) Can the failure to use seat belts be considered in the determination of appropriate damages, yet be excluded from the foreseeability determination, in the same crashworthiness case? If so, how can it be done? If not, why not? How should the pleadings read?

"(3) How would you reconcile *Sandford v. Chevrolet Division of General Motors*, 292 Or 590 (1982), with the 'Fazzolari Trilogy' and, separately, with *Robinson v. Lewis*, 254 Or 52 (1969), regarding the use of seat belt evidence in apportioning fault and calculating damages in products liability cases, particularly crashworthiness cases like the instant controversy?

"(4) In determining the scope of the 'accident' in a crashworthiness case, should it include the resulting injury? If so, to what extent should it? If not, why not?

"(5) What effect, if any, does the enactment of new legislation (HB 2399, 1987 Session) have upon the admissibility of evidence of non-use of a seat belt in civil litigation?"

passed, the statute arguably would make failure to use a safety belt a statutory "fault," ORS 18.470, 18.480, but for the exclusion in the statute. However, we do not now decide the application of a proposed statute not presently the law.

It also has been argued that this court should not hold that evidence of nonuse of a safety belt should be admissible prior to the decision of the people in the pending referendum, because to do so would undermine the impact of the voters' decision or depreciate the value of the referendum process. Along this same line, plaintiff has argued that the existence of a "seat belt defense" is properly left to the legislature or to the people, citing the language in this court's decision in *Donaca v. Curry Co., supra,* to the effect that this court will not normally take upon itself the responsibility of declaring what the preferable policy should be. The language in *Donaca* should be read in the context in which it was written. In *Donaca* we rejected an approach to tort liability by resort to a legislative style of policy-making, instead maintaining a judicial search for policy made by others or for the implications of existing principles. This court will not wipe the slate clean so that we can make sweeping declarations of liability based on what we think the law should be.

This does not mean, however, that a court should not decide the cases before it. While avoiding abstract policy declarations or justifications, the court must deal with each case by applying legislative declarations and the common law to present realities. Reminding litigants of the proper judicial role when they seek a change in the law based on abstract principles of policy does not mean that a court must allow every past decision to stand regardless of its reasoning merely because a modification of the prior decision could be read as a change in the "policies" of the common law in Oregon. *See, e.g., Winn v. Gilroy,* 296 Or 718, 681 P2d 776 (1984) (modifying parental immunity doctrine).

Moreover, enactment of ORS 18.470 and 18.480 changed the law as to a plaintiff's fault since the *Robinson* decision. In deciding that evidence of a failure to use a safety belt can be introduced at trial, this court is not stating that every driver, or even every plaintiff, should use a safety belt. Whether not using a safety belt is unreasonable under the

circumstances of this case is for the factfinder to decide on the evidence, not for the court to decide as a matter of law.

The final question in this case is how the defendant can raise the question of plaintiff's failure to use a safety belt. In the present case, defendant raised the question by pleading the failure as a form of comparative fault. In the case of *Morast v. James,* 304 Or 571, 748 P2d 84 (1987), the defendant argued that the plaintiff failed to mitigate damages.

Other courts which have faced the question of how to apportion damages once evidence of a failure to use seat belts is admitted have chosen some variant of either comparative fault or mitigation of damages as the proper vehicle for pleading a "seat belt defense." As a practical matter of how the jury is to determine the proportional fault of the parties, the solutions chosen by these courts usually amount to some combination of the better parts of comparative fault and mitigation of damages. *See, e.g., Insurance Company of North America v. Pasakarnis,* 451 S2d 447 (Fla 1984); *Lowe v. Estate Motors Ltd.,* 428 Mich 439, 410 NW2d 706 (1987); *Foley v. City of West Allis,* 113 Wis 2d 475, 335 NW2d 824 (1983). We hold that the affirmative defense of failure to wear a safety belt can be pled and proved through the application of Oregon's comparative fault law.

Does the fact that this case concerns the crashworthiness of an automobile rather than an ordinary negligence case change the application of the comparative fault defense? In general, crashworthiness cases involve the same questions.[3] The factfinder's determination of which of plaintiff's injuries the defendant will be liable for is relevant in crashworthiness cases with safety belt defenses as well as in cases based solely on ordinary negligence. They require the same type of determination in a comparative fault automobile case. First the factfinder must determine if the defendant's conduct was at "fault," by negligence or otherwise, and was a cause of the plaintiff's injuries. Second, the factfinder must determine if the plaintiff was at fault in a way that contributed

---

[3] For instance, in this case plaintiff labels his complaint "NEGLIGENCE-PRODUCT LIABILITY," and then charges that the BMW involved in the collision "was unreasonably dangerous and defective in design and manufacture" as to the fuel filler cap followed by six allegations of how the defendant, "in failing to" do certain acts, caused plaintiff's injuries. In other words, plaintiff's complaint appears to be a mixture of ordinary negligence and strict liability.

to the cause of the collision and to the plaintiff's injuries.[4] Under ORS 18.470, any fault of a plaintiff that contributed to causing his injury by failing to use a safety belt should be considered with any of plaintiff's fault that contributed to the cause of the collision.[5]

---

[4] The respective fault of a plaintiff in not using a safety belt and of a defendant in causing a collision often will be different in the sense that, unless the failure to use a safety belt somehow contributed to the cause of the collision, the failure to use a safety belt is unrelated to the fault for the collision. There are some circumstances where the negligence of the defendant and the plaintiff's failure to buckle up would not be so clearly different. One such case would be in the rare circumstance where the plaintiff's failure to buckle up was a cause of the accident itself. *See, e.g., Curry v. Moser,* 454 NYS2d 311 (1982), where the plaintiff's failure to buckle up allowed the plaintiff to slide from the car when the car made a turn.

[5] In this case, the jury was given and answered the following interrogatories:

"1. Was the automobile manufactured by Defendant Bayerische Motoren Werke (BMW), distributed by Defendant BMW of North America, Inc. and sold by Defendant Roth Motor Company, dba Roth BMW, in a unreasonably dangerous and defective condition which was a substantial factor in causing injury to Plaintiff?

"ANSWER:    Yes  X     No _____

"If your answer to Question 1 was 'No,' this completes your deliberations and your verdict is in favor of Defendants.

"If your answer to Question 1 is 'Yes,' then answer Question 2 below:

"2. Was Plaintiff negligent in any respect claimed by the Defendants which caused injury to Plaintiff?

"ANSWER:    Yes  X     No _____

"If your answer to Question 2 is 'no,' proceed to Question 4 and do not answer Question 3.

"If your answer to question 2 is 'yes,' proceed to Question 3.

"3. What percentage did Defendants' defective vehicle contribute to cause the injury?

"ANSWER:      60  %

"What percentage did the negligence of Plaintiff contribute to cause the injury?

"ANSWER:      40  %

"(the percentages must equal 100%)

"If Plaintiff's percentage is greater than 50%, your verdict is for the Defendants. Your foreperson should sign this verdict form. Do not answer any further questions.

"If Plaintiff's percentage is 50% or less, then answer Question 4.

"4. What are Plaintiff's total money damages?

"ANSWER:   Total money damages $950,000 + $49,959.34

"Do not reduce the total money damages by Plaintiff's percentage, if any, as the Court will do this when entering judgment."

The answer to question No. 3 should combine any negligence in failing to properly

In the present case defendant raised the affirmative defense that plaintiff's claim should be reduced or barred because of plaintiff's failure to use the safety belt in the car. Because there was evidence offered from which the jury might have concluded that plaintiff's injuries were exclusively or primarily the result of his failure to fasten his safety belt, and because the jury could have found that plaintiff's failure to do so was not reasonable under the circumstances, the jury should have considered how these facts affected the responsibility for damages. The trial court erred in striking defendant's pleadings and in not admitting the evidence offered by defendant on the issue of the safety belt defense.

The decisions of the Court of Appeals and the trial court are reversed, and the case is remanded to the circuit court for a new trial.

---

operate the vehicle with any negligence in failing to fasten a safety belt.

The percentages should be stated as measures of fault, not as contributions to causation. *See Sandford v. Chev. Div. Gen. Motors,* 292 Or 590, 642 P2d 624 (1982). In this case, plaintiff's total fault would be the degree of fault that contributed to causing the collision plus any fault contributing to the extent of the injuries resulting from failure to buckle up, translated into a percentage. ORS 18.480. Finally, if the total fault of plaintiff as compared with defendant's fault is not more than 50 percent, the jury should determine the total damages sustained by plaintiff. The court will then do the arithmetic.