18991

RIDDLE-DUCKWORTH, INC., Respondent, v. Harold SULLIVAN and Fred Green d/b/a Sullivan-Green Insurance Agency, Appellants

(171 S. E. (2d) 486)

412

*Messrs. Fant & Doyle,* of Anderson, *for Appellants,*

*Messrs. Anderson, Chapman & Kenyon,* of Anderson, *for Respondent,*

December 8, 1969.

LEWIS, Justice.

This appeal involves a review of a judgment obtained against the defendants, as insurance agents, for damages sustained by plaintiff from their alleged negligence in the procurement of a liability insurance policy. Error is assigned in the failure of the lower court to grant defendants' timely motions for nonsuit, directed verdict and judgment *non obstante veredicto* and, in the alternative, in the refusal to grant a new trial.

We first dispose of those exceptions which assign error in the refusal of the lower court to enter judgment in favor of the defendants. These are based upon the contentions that (1) there was no showing of actionable negligence on the part of the defendants, (2) the plaintiff was guilty of contributory negligence as a matter of law, and (3) the action was barred by the statute of limitations.

In determining the foregoing issues, we are required to view the evidence and the reasonable inferences to be

drawn therefrom in the light most favorable to plaintiff. Our review of the testimony will be so confined, although the facts are in direct conflict on practically all material issues.

It appears that Marshall B. Duckworth and a Mr. Riddle began operating a home and auto appliance business in 1956 under the name of the plaintiff corporation, with Duckworth as the general manager. Complete liability insurance coverage for the business premises was desired and Duckworth discussed the matter with the defendant Green, an experienced insurance agent. Green was shown an elevator or hoist lift located in the plaintiff's place of business, which, while used primarily for transporting goods to and from a second floor storage area, was occasionally used to carry people. Green was informed of the uses made of the elevator and was specifically requested by plaintiff to include it in the liability coverage to be procured. Green undertook to procure the coverage desired and subsequently delivered an Owners' Landlords' and Tenants' liability insurance policy, giving assurances to plaintiff that it afforded full coverage for the business premises, including the elevator, and received from plaintiff the requested premium.

In 1958, plaintiff's business was moved to a new location nearby and Green was informed of the change so that coverage under the liability policy, which had been renewed each year, could be transferred to the new building. The new building contained a second floor to be used for storage and the elevator used in the old building was moved and installed in the new. There were no stairs in the new building and the elevator was the only way to get to the second floor. Green was informed of this fact. He immediately made the requested policy change as to location and assured plaintiff that complete coverage of the new business premises, including the elevator, was provided.

The original policy was issued on January 16, 1956 for a one year period. It was renewed annually thereafter, with

Green sending a new policy each year and a bill for the premium. As plaintiff added new items of merchandise to the appliance business, such as lawn mowers and a machine for making keys, Green was called in each instance to inquire if the liability policy covered the additions. Green assured plaintiff each time that the business was "fully covered and there was nothing to worry about."

The last discussion of the policy coverage was in early 1962. When Duckworth, the manager of plaintiff, received the policy covering the period from January 16, 1962 to January 16, 1963, he read it and apparently some doubt arose in his mind as to whether coverage was afforded for the operation of the elevator. The policy contained a provision that insurance was afforded "only with respect to such and so many of the following coverages * * * as are indicated by specific premium charge or charges." There then followed a list of coverages with a space opposite for the amount of the premium charged for each. The word "elevator" was included in the list but no premium was entered or charged for such coverage.

After reading the 1962 policy, Duckworth called Green and asked him about coverage on various items listed in the policy, including that of *elevator*. Duckworth testified that, although he could read and was experienced in his own business, he was unfamilar with the insurance business and was not sure as to whether the policy afforded the coverage which Green undertook to procure. In response to the specific inquiry concerning the 1962 policy, Green informed Duckworth that the policy provided full coverage. Duckworth relied upon Green's assurance that the policy afforded the desired protection and did nothing further about the matter.

The lift or elevator in question was apparently designed primarily for handling freight and not people. It is inferable that, because of the nature of the lift, Green did not consider it an elevator within the meaning of the policy, so as to require specific *elevator* coverage, but considered that it was

covered under the general policy provisions. It is further inferable that such construction by Green prompted the representations made to the plaintiff that protection was afforded from the hazards of the operation of the elevator.

Thereafter, in May 1962, the elevator in plaintiff's building fell and injured a customer. Plaintiff's manager immediately notified Green of the accident and asked him to take care of it. Green assured him that "everything would be taken care of." Subsequently, defendant Sullivan, who was then an adjuster, came to plaintiff's place of business and, upon being shown plaintiff's policy, concluded that it did not provide coverage for the operation of the elevator. Plaintiff's manager then called Green about the lack of coverage, to which Green replied: "I just made a mistake * * * don't worry * * * I will take care of it."

Thereafter, suit was entered against plaintiff in the Summer of 1962 by the injured party to recover the damages sustained in the fall of the elevator, resulting in a verdict against plaintiff in the amount of $7,500.00. This action was then brought by plaintiff to recover the amount of the judgment obtained against it, and resulted in a verdict against defendants in that amount, from which they have prosecuted this appeal.

At the outset, we dispose of defendant Sullivan's contention that the lower court erred in refusing to direct a verdict in his favor. The action was brought against Harold Sullivan and Fred Green and the complaint alleges that they were partners doing business as insurance agents under the name of Sullivan-Green Insurance Agency. While judgment was rendered against both defendants, the record conclusively shows that the agency was a corporation and that Sullivan had effectively severed all connection with it long before the events in 1962 which caused plaintiff's damage. The transactions relative to the procurement of the insurance in question were solely between plaintiff and defendant Green and the lower court was in error in refusing

the motion of the defendant Sullivan for a directed verdict. Our further consideration of the issues, therefore, concerns solely the liability of the defendant Green.

This is an action *ex delicto* based upon the alleged negligence of defendants in failing to procure, as they undertook to do, a liability insurance policy for plaintiff covering loss from the operation of the elevator located on its business premises. The first question to be decided is whether there was any evidence to sustain a finding of actionable negligence on the part of the defendant.

Insurance has long been recognized as a business affected with public interest. It is a complicated business and its intricacies often confuse the average layman. The Legislature has accordingly provided for the licensing of insurance agents by the State so as to place the business of insurance in competent and trustworthy hands. This court in *La Tourette v. McMaster,* 104 S. C. 501, 89 S. E. 398, in recognizing the specialized nature of the insurance business, stated: "It is one of many complications, requiring, for its safe conduct, not only expert knowledge, but such knowledge as can be acquired only by experience in the business."

Therefore, the respective duties and obligations arising from the relationship of a principal and his agent in the procurement of insurance must be determined in the light of the fact that the agent was an expert dealing in a highly specialized business, with knowledge and means of knowledge not possessed by the average applicant for insurance.

We have long recognized the general rule that insurance agents and brokers "are required to exercise due care in placing insurance and would be personally liable for the neglect of that duty." *La Tourette v. McMaster, supra,* 104 S. C. 501, 89 S. E. 398. This principle was restated with approval in the recent case of *Hinds v. United Insurance Company of America,* 248 S. C. 285, 149 S. E. (2d) 771.

The foregoing rule is in accord with the principle generally recognized as governing the duties and responsibilities of an insurance agent or broker in negotiating insurance contracts for a member of the public. 43 Am. Jur. (2d), Insurance, Sections 174 and 176; 44 C.J.S. Insurance § 172; Appleman, Insurance Law and Practice, Sections 8831,8841; Annotation: 29 A.L.R. (2d) 171.

The cited authorities state the applicable general principles to be that, where an insurance agent or broker, with a view toward being compensated, undertakes to procure insurance for a member of the public, the law holds the agent or broker to the exercise of good faith, and reasonable skill, care and diligence in performing the obligation. If the agent or broker fails, because of his fault or neglect, to procure the insurance, or does not follow instructions, or if the policy is void or materially deficient, or does not provide the coverage he undertook to supply, he is liable to his principal for the loss sustained thereby in the amount that would have been due under the insurance policy if it had been obtained and provided the desired coverage.

In such cases, the burden is upon the insured to show with reasonable certainty the terms and conditions of the agreement. Generally, a valid contract to procure insurance exists where there is established a promise by the insured to take a policy of insurance and an undertaking on the part of the agent or broker to procure it, with sufficient information provided upon which to procure the policy. 43 Am. Jur. (2d), Insurance, Section 174.

In the present case, there was evidence that the defendant Green, a licensed insurance agent or broker, undertook, as agreed with plaintiff, to procure a liability insurance policy covering plaintiff's business premises, specifically including the operation of an elevator or lift used in the business. The elevator coverage was not to be procured in a separate policy but as a part of the overall policy to be provided. While there was no direct testimony

as to the amount and duration of the protection to be afforded for the operation of the elevator, it is inferable that the elevator was to be insured for the period and under the limits of the policy issued for other coverage. It is also inferable that the plaintiff agreed to pay the premium necessary to effect such protection. We think that there was evidence from which a reasonable inference could be drawn that the defendant Green entered into an undertaking to procure liability insurance protection for the operation of plaintiff's elevator, which imposed on the defendant a duty to exercise reasonable care and skill in performing such obligation.

It is further inferable that, in the performance of the obligation assumed, defendant obtained and delivered to the plaintiff a liability policy with the representation that it provided the desired protection but which, through defendant's fault and neglect, failed to include coverage for the elevator, resulting in loss to the plaintiff. There was evidence that, after the loss, defendant Green admitted that he had made a mistake in the policy coverage. The loss to plaintiff resulted from the lack of coverage in his policy, which defendant undertook to provide and failed to do. The evidence was such as to permit an inference of actionable negligence on the part of defendant Green and the motion for a directed verdict in his favor on that ground was properly denied.

The defendant further contends that the motion for a directed verdict in his favor should have been granted because of the failure of plaintiff to prove that the elevator was not insured under the policy. There is no merit in the contention. Insofar as this case is concerned, the issue is resolved by the testimony of the defendants in which they conceded that the policy provided no coverage for the elevator.

Defendant next contends that, assuming negligence on his part, the plaintiff was guilty of contributory negligence as a matter of law so as to bar recovery and that the trial judge

should have directed a verdict in defendant's favor on that ground. Defendant relies upon the principle, followed in actions brought by an insured against an insurer for fraud and deceit, that it is the duty of a person to read his contracts or have someone to read them for him and the reckless disregard by an insured of the duty to avail himself of the opportunity and means at hand to protect his own interests will bar him of recovery. Typical of that type case is *Souba v. Life Insurance Company of Virginia*, 187 S. C. 311, 197 S. E. 826. The contended factual basis for the application of the rule in this case is the testimony that the manager of the plaintiff corporation read the policy delivered to him by the defendant, knew or should have known that it did not afford insurance coverage for the elevator, and failed to do anything to secure the protection desired.

The defense of contributory negligence is available to an agent against whom the principal brings an action in *tort* for negligence. Restatement of The Law, Second, Agency, Section 415, Comment (b), page 275; 44 C.J.S. Insurance § 172, page 862.

The issue of contributory negligence must be resolved in the light of all of the circumstances, including the respective knowledge and means of knowledge of the parties, their relationship, and the duties and responsibilities which such relationship imposed.

This is not an action between an insured and the company upon a contract of insurance where the parties dealt at arms' length, but is one for the failure of the defendant, as plaintiff's agent, to procure a particular kind of insurance. Because of the agency relationship existing between the parties, we do not think that the cases relied upon by defendant, involving actions between the insured and insurer, are controlling in the present situation. While an insured cannot abandon all care, the rules which require one to inform himself of the terms of his contract and to take precautions for his own protection are less exacting

when dealing with one's own insurance agent or broker in the procurement of an insurance contract. See: *Kap-Pel Fabrics, Inc. v. R. B. Jones & Sons, Inc.,* Mo. App., 402 S. W. (2d) 49, 58; *Schustrin v. Globe Indemnity Co. of New York,* 44 N. J. Super. 462, 130 A. (2d) 897.

Defendant was a licensed insurance agent and held himself out to the public as knowledgeable and experienced in the insurance business. As such, he was requested and undertook to provide plaintiff with the insurance coverage desired. Plaintiff, while experienced in his own business, was not experienced in the insurance field and had a right to rely upon the expert knowledge of the agent. The reasonableness of the conduct of the parties must be assessed in that light.

When the 1962 policy of insurance was received, plaintiff's manager read it, was not sure as to the coverage provided, made inquiry of his skilled agent thereabout, and was assured that the policy provided the insurance protection requested. The entire policy of insurance involved is not before us. Irrespective however, it cannot be held, as a matter of law, as contended by defendant, that plaintiff should have known from a reading of the policy that the elevator was not insured, especially in view of defendant's testimony, an insurance expert, that he thought until after the loss that the elevator was probably insured under the general provisions of the policy and that special elevator coverage was unnecessary.

We think that the question of whether plaintiff acted with due care in relying upon the defendant in the procurement of the insurance and his representations as to the coverage afforded was an issue of fact to be resolved by the jury. The lower court properly refused to direct a verdict upon the ground that plaintiff's contributory negligence barred recovery as a matter of law.

Finally, defendant takes the position that judgment should have been entered in his favor because the present action

was barred by the statute of limitations. Under Section 10-143 of the 1962 Code of Laws, the action was barred unless commenced within six (6) years from the time that the cause of action accrued.

The initial transaction between the parties occurred ▮ in 1956 when the defendant agreed to procure a policy of insurance providing liability coverage on the elevator. It is inferable that the defendant undertook to provide coverage on the elevator in each of the policies issued from 1956 to 1962. However, the basis of plaintiff's cause of action was not that defendant negligently failed to provide the requested coverage in 1956 but that he failed to do so in securing the 1962 policy. The prior transactions between the parties were simply relevant upon the issue of whether defendant undertook to provide the particular coverage in the policy obtained in 1962. The present action was begun in the Summer of 1962, just a few months after the 1962 policy was issued and the loss was sustained. It is therefore timely instituted.

The remaining questions relate to alleged errors which defendant contends entitled him to a new trial.

The first concerns alleged error in the refusal of defendant's motion for a mistrial because of certain testimony by Duckworth, plaintiff's manager, as to statements made to him by the defendants after the customer had been injured from the fall of the elevator and while an attempt was being made to have the defendants take care of the loss. Duckworth quoted the defendant Sullivan as saying, "Don't worry about it. Fred (defendant Green) is protected from errors." He further testified that defendant Green told him, "Don't worry about it. We'll take care of it;" and later, "Don't worry about it. I just made an error and I am protected and I will take care of you."

The defendant contends that the reference in the foregoing testimony to the defendant Green being "protected" was highly prejudicial in that the only inference to be drawn

therefrom was that the defendant had liability insurance which would pay any judgment awarded against him. The trial judge did not agree and refused to grant defendant's motion for a mistrial.

Whether or not a motion for a mistrial is granted rests in the sound discretion of the trial judge and his ruling thereabout will not be disturbed unless an abuse of discretion is shown. We find no abuse of discretion in this instance. *Crocker v. Weathers,* 240 S. C. 412, 126 S. E. (2d) 335.

Defendant also contends that the court erred in several respects in the charge to the jury. First, he alleges that the court erred in charging the jury concerning the duty of an insurance agent to handle an application for insurance without unreasonable delay and with reasonable promptness. The instruction was a part of the general charge as to the duty of an insurance agent to exercise due care in placing insurance for an applicant. In view of the fact that the issues involved the negligent failure of defendant to procure the insurance coverage sought, there was no prejudice from the instruction that an insurance agent is required to handle an application for insurance with reasonable promptness.

Second, the defendant contends that the court erred in failing to charge the jury as to the duty of an insured to read his policy and acquaint himself with its contents. The manager of plaintiff conceded that he read the policy and there was apparently no issue as to its wording. The issue in this connection was not whether plaintiff read the policy but concerned the reasonableness of plaintiff's reliance on defendant's representation that the policy as worded actually covered the risk for which insurance had been requested. There was no error in refusing this instruction.

Finally, it is argued that the court erred in its charge to the jury with reference to the liability of copartners and the

liability of a corporation for the acts of its agents. Our holding that the court should have directed a verdict in favor of the defendant Sullivan and the fact that there was no corporate defendant disposes of this contention. No prejudice could have resulted to the defendant by giving the instructions in question.

The judgment of the lower court is accordingly affirmed as to the defendant Green and reversed as to the defendant Sullivan.

Affirmed in part and reversed in part.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.