Argued and submitted July 10, 1991, the decision of the Court of Appeals and judgment of the circuit court are reversed, and the case is remanded to the circuit court for further proceedings September 3, 1992

Elidio MARTINI,
*Respondent on Review,*

*v.*

BEAVERTON INSURANCE AGENCY, INC.,
dba Beaverton-Tigard Insurance Agencies,
*Petitioner on Review.*

(CC A8704-02146; CA A49993; SC S37696)

838 P2d 1061

James M. Callahan, of Callahan & Shears, P.C., Portland, argued the cause for petitioner on review and filed the petition.

Michael H. Bloom, Portland, argued the cause for respondent on review and filed the response.

Thomas M. Christ, of Mitchell, Lang & Smith, Portland, filed a brief on behalf of *amicus curiae* Independent Insurance Agents of Oregon.

GRABER, J.

## GRABER, J.

In this action for negligent failure to procure insurance, the principal issue on review is whether the trial court erred in striking from defendant's amended answer a specification of comparative fault alleging that plaintiff failed to read the insurance policy after obtaining it from defendant and in instructing the jury that it should not consider whether plaintiff had read his policy. The Court of Appeals held that the trial court did not err and affirmed. *Martini v. Beaverton Ins. Agency, Inc.*, 103 Or App 587, 798 P2d 704 (1990). We reverse.

Plaintiff owned and managed a business that operated a restaurant in a building that he leased. The lease contained a clause that required plaintiff to maintain liability insurance, "insuring both the lessor and the lessee [plaintiff] against all liability for damages to person or property in or about said leased premises." The lease also required plaintiff to hold the lessor harmless for damage if plaintiff failed to comply with any covenant of the lease.

Plaintiff originally obtained an insurance policy through another insurance agency. That policy contained an "additional insured" endorsement covering the lessor. Plaintiff had that policy for four years.

Then plaintiff sought a liability policy through defendant, an insurance agency that had arranged plaintiff's automobile insurance for several years. The new policy, which insured the corporation that plaintiff owned, contained no "additional insured" endorsement.

About one year after obtaining the new policy, plaintiff was injured at the restaurant, and he sued the lessor for negligent maintenance of the premises. The lessor raised as an affirmative defense that plaintiff had breached the condition of the lease requiring him to insure the lessor. The lessor contended that, even if plaintiff prevailed, he was required under the terms of the lease to hold the lessor harmless for any damages. Plaintiff settled the personal injury claim with the lessor for $6,282.

Plaintiff thereafter sued defendant. He claimed that defendant was negligent in failing to procure the "additional

insured" endorsement and that the absence of the endorsement reduced the value of plaintiff's personal injury claim against the lessor. Defendant alleged that plaintiff was comparatively at fault in three respects: in informing defendant that he was buying, rather than leasing, the insured premises; in failing to inform defendant that the lessor was to be an additional insured; and in failing to read his policy after defendant delivered it.

The trial court bifurcated the case. First, the jury was asked to consider the underlying personal injury action that plaintiff had brought against the lessor. The jury found that plaintiff's damages caused by the lessor were greater than the amount of the settlement.[1]

Next, the jury was asked to consider plaintiff's negligence claim against defendant for failing to procure liability coverage for the lessor. During the second part of the trial, on plaintiff's motion, the court struck defendant's third specification of comparative fault, which concerned plaintiff's failure to read his insurance policy after defendant delivered it. The court later instructed the jury:

> "[T]he Plaintiff had no duty in this case to read the insurance policy. The Plaintiff had a right to rely upon the superior expertise of Defendant's agent and had the right to assume that the Defendant's agent performed that duty. However, should the Plaintiff be apprised of the contents of his insurance policy, Plaintiff may not necessarily avoid responsibility for his own actions or inactions that may have * * * caused or contributed to his own damages."

Defendant excepted to that instruction:

> "I except to the instruction that deals with the plaintiff having no duty to read the insurance policy under the cases that follow: *Fazzolari*[2] and a recent case, *Becker v. Port Dock Four*.[3] I also think that to some extent that's a

---

[1] The jury found that plaintiff would have been entitled to recover from the lessor $70,000 in general damages, $8,500 in lost wages, and $4,417 in medical expenses.

[2] *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), is discussed below.

[3] In *Becker v. Port Dock Four, Inc.*, 90 Or App 384, 752 P2d 1235 (1988), the Court of Appeals held that, in an action against a lawyer for professional negligence,

comment on the evidence with respect to his right to rely — his right to assume certain things, etc."

After deliberations in the second part of the trial, the jury found that defendant insurance agency was 70 percent negligent and that plaintiff was 30 percent negligent. The trial court reduced plaintiff's damages, which had been determined in the first phase of the trial, by 30 percent and by the personal injury settlement amount, and entered judgment in plaintiff's favor for the remainder. Defendant appealed.

In the Court of Appeals, defendant argued, among other things, that the trial court erred by striking its third specification of comparative fault and by instructing the jury that plaintiff had "no duty" to read the policy. The Court of Appeals rejected that argument, holding that an insured's failure to read an insurance policy is not a defense to a claim that the agent negligently failed to procure coverage. The Court of Appeals cited *Precision Castparts v. Johnson*, 44 Or App 739, 743, 607 P2d 763 (1980), which in turn relied on *Franklin v. Western Pac. Ins. Co.*, 243 Or 448, 414 P2d 343 (1966). *Martini v. Beaverton Ins. Agency, Inc., supra*, 103 Or App at 593.

In *Franklin v. Western Pac. Ins. Co., supra*, 243 Or at 452-53, this court stated:

---

the defendant could assert that the plaintiff was comparatively at fault for failing to read the deed that the lawyer had drafted. In pertinent part the opinion stated:

"We conclude that the comparative fault issue was properly submitted to the jury here. * * *

"* * * Legal malpractice *is* a form of negligence. In other negligence contexts, findings of comparative fault can be based on the plaintiff's failure to take reasonable measures which might have prevented or reduced the injury caused by the defendant's negligence. We discern no convincing reason why that should not be true in this context.

"* * * [Plaintiffs] failed to read a document before signing it and, as a possible result, neglected to call the lawyer's attention to the fact that he had omitted data which was very much within plaintiffs' knowledge. * * *

"We therefore reject plaintiffs' contention that, as a matter of law, they cannot be chargeable with negligence for the omissions in the document which they hired defendant to prepare. * * * The jury's estimation of whether and to what extent plaintiffs were at fault could be, and perhaps was, affected by any relationship which it found between their lack of legal knowledge and the likelihood that their reading the deed would have made a difference. However, that was a question for the jury." 90 Or App at 390-91 (emphasis in original; footnote omitted).

"Under usual circumstances, when one contracts with another, whether it be an insurance contract or otherwise, the contracting parties have an obligation to read the contract and if they assent without so doing, they cannot come into court later and successfully contend that their agreement was different than that expressed in the writing. Here, however, the pleading reasonably can be construed as alleging that [defendant-insurance agent] was the agent of the plaintiffs, as well as the Insurance Company, and the rule as to insurance agents is as stated in 3 Couch, Insurance [370, § 25.60 (2d ed 1960)]:

" 'The insured * * * [was] not barred from suing the agent where the latter obtained a policy which did not conform to his instructions by virtue of the fact that the insured did not examine the policy and detect such nonconformity, *the principal being entitled to assume that the agent performed his duty.* * * *' (Emphasis added.)

"The feature that distinguishes an action against an agent on a contract to procure insurance from the usual action on a contract is that plaintiffs, as clients, 'had the right to rely upon a presumed obedience to * * * (their) instructions on the part of * * * (their) skilled agent, and * * * (were) not negligent in [not] taking steps to investigate the matter.' " (Citations omitted.)

The Court of Appeals applied that rule to plaintiff's negligence claim without discussion. *Martini v. Beaverton Ins. Agency, Inc., supra,* 103 Or App at 593. The Court of Appeals' opinion failed to note that the plaintiffs in *Franklin* claimed only a breach of contract; there was no claim of negligence. In *Franklin,* this court discussed the circumstances in which "an agent is in breach of his contract to procure," 243 Or at 450; read the plaintiffs' complaint "as stating an agreement" to procure certain coverage, *id.* at 451; and concluded: "We construe plaintiffs' cause of action as a breach of contract to procure insurance," *id.* at 453. *Franklin* did not purport to establish a rule affecting negligence claims.

In the present case, plaintiff brought two claims, one for breach of contract and one for negligence. As this court has held:

"An insurance agent or broker who agrees to procure insurance for another for a fee but fails to do so may be liable for any damage resulting from his omission. Liability may be based upon a breach of contract or upon negligence, or upon

both, depending upon the particular circumstances of the case." *Joseph Forest Products v. Pratt*, 278 Or 477, 480, 564 P2d 1027 (1977).

The jury rejected plaintiff's contract claim, and he did not appeal its disposition. Accordingly, the question before us is not the correctness or the continuing vitality of *Franklin v. Western Pac. Ins. Co., supra.* Rather, the narrow question is whether we should extend to negligence claims the limitation that *Franklin* placed on the defenses available against contract claims.[4] That question is one of first impression for this court.[5] We decline to extend *Franklin* to negligence claims.

---

[4] Other jurisdictions have examined the present question and have distinguished between contract and negligence claims, holding that, in negligence claims, the question whether the insured's failure to read the policy contributed to the insured's damages is for the trier of fact. *See, e.g., Floral Consultants, Ltd. v. Hanover Ins. Co.*, 128 Ill App 3d 173, 83 Ill Dec 401, 470 NE2d 527, 529 (1984) (in insurer-insured cases where one party attempts to deny effectiveness of a policy provision, insured has "duty" to read policy and inform insurer of any discrepancy before filing a claim; by contrast, in insured-agent negligence cases, insured's failure to read policy may amount to contributory negligence, for consideration in determining damages, but it does not bar relief as a matter of law); *Stoes Bros., Inc. v. Freudenthal*, 81 NM 61, 463 P2d 37, 40 (App 1970) ("a jury question was presented as to whether plaintiff had a duty to read the policies of insurance in its possession and ascertain the nature and extent of coverage which it had and which had been procured for it by defendant"; prior cases and cases from other jurisdictions, holding that a plaintiff's failure to read the policy is no defense, are inapplicable, because they involved claims for breach of contract, rather than negligence).

[5] So far as our research discloses, all jurisdictions that have considered the issue have held that a defense of contributory fault or comparative fault for failure to read an insurance policy presents a jury question in negligence actions. *See, e.g., Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So 2d 1060 (Ala 1978) (in negligence case, whether insured was contributorily negligent for failing to read insurance policy was a question of fact for the jury); *Darner Motor Sales v. Universal Underwriters*, 682 P2d 388 (Ariz 1984) (question of contributory negligence turns on reasonableness of insured's failure to read policy and of reliance on statements made by insurance agent; therefore, it is a question for the trier of fact); *The Twelve Knotts Limited Partnership v. Fireman's Fund Ins. Co.*, 87 Md App 88, 589 A2d 105 (1991) (where insured was sophisticated business entity with previous experience in purchasing insurance and policy was clear, insured was negligent in failing to read policy and could not recover on either negligence or contract claim); *Parmet Homes, Inc. v. Republic Ins. Co.*, 314 NW2d 453 (Mich App 1981) (in negligence action, jury was to decide contributory negligence of insured, whether a reasonably careful person would have read the policy under the circumstances); *Schustrin v. Glove Indem. Co. of New York*, 44 NJ Super 462, 130 A2d 897 (1957) (in negligence suit against agent, insured's failure to read the policy does not *per se* bar recovery, but is a circumstance to be considered on the issue of insured's contributory negligence); *Fobare v. Mohawk Nat. Bank*, 352 NYS2d 138, 77 Misc 2d 210 (1974) (in a negligence claim, whether insured's testator was contributorily negligent for not studying a group insurance certificate would be a question of fact); *Krik v. R. Stanford Webb Agency, Inc.*, 75 NC App 148, 330 SE2d 262, 264, *rev den* 314 NC 541, 335 SE2d 18 (1985) (it

■     Although the parties and the trial court have characterized the issue as whether plaintiff had a "duty to read the insurance policy," we emphasize that the issue is not whether plaintiff had a "duty." Rather, the issues are framed more precisely this way: (1) May defendant raise plaintiff's failure to read the policy as a specification of comparative fault? (2) Was there evidence from which the jury could have found that, in the circumstances of this case, it was unreasonable in the light of foreseeable risks for plaintiff not to read the policy and that plaintiff's unreasonable failure to read the policy contributed to his damages? We answer both of those questions "yes."

This court discussed Oregon's current common law of defenses in negligence actions most recently in *Dahl v. BMW*, 304 Or 558, 748 P2d 77 (1987). There, this court considered "whether a plaintiff's failure to use an installed, operable safety belt and testimony concerning the effect of this failure on the plaintiff's total injuries can be a matter for the trier of fact to weigh in its apportionment of responsibility for the plaintiff's injuries" sustained in an automobile accident. 304 Or at 563. The court held that the trial court erred in striking from the defendant's pleadings an allegation that the plaintiff's claim should be reduced or barred because of the plaintiff's failure to use the safety belt in the car, and in not admitting evidence offered on the issue. *Id.* at 570. In arriving at that holding, this court explained:

"Invoking 'no duty' to justify not submitting a question to the jury states a conclusion without application to the

---

was proper to submit the issue of contributory negligence to the jury; although "insurance policies are often complex and may be difficult for the average insured to comprehend," the provisions at issue were "plain" and the insured was an educated, experienced business person); *Riddle-Duckworth, Inc. v. Sullivan*, 253 SC 411, 171 SE2d 486 (1969) (jury question whether insured acted with due care in relying on insurance agent to procure insurance and on agent's representations as to coverage); *Colonial Sav. Assn. v. Taylor*, 544 SW2d 116 (Tex 1976) (in negligence case, whether insured was contributorily negligent for failing to read insurance policy was a question of fact for the jury). Some additional jurisdictions have held that the insured's failure to read the policy raises a jury question in other types of tort cases. *See, e.g., G & R Tire Distributors v. Allstate Ins. Co.*, 411 A2d 31 (Conn 1979) (in action based on misrepresentation, jury was correctly instructed that plaintiff could be contributorily negligent if he unreasonably failed to read his policy); *Medtech Corp. v. Indiana Ins. Co.*, 555 NE2d 844 (Ind App 1990) (in fraud action, reasonableness of insured's failure to read policy and of reliance on insurance agent was a question of fact for the jury).

present facts. When a court concludes that there is 'no duty' without reference to a particular status or relationship or legal definition, the court has concluded that a reasonable response to a foreseeable injury would never include the acts which allegedly contributed to the plaintiff's injuries.

"* * * * *

"Under all but the most unusual factual situations, disputes over actual or perceived effectiveness of actions or devices which might have prevented injury are not to be determined as a matter of law." 304 Or at 564-65.

Plaintiff contends that the foregoing general principles do not apply to claims for "professional" negligence, because in those cases there is "reference to a particular status or relationship" within the meaning of *Dahl v. BMW, supra,* 304 Or at 564, which plaintiff labels a "special relationship." Plaintiff cites *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987), for the same proposition.[6]

In *Fazzolari v. Portland School Dist. No. 1J, supra,* this court differentiated, from ordinary negligence claims, cases in which "an injured plaintiff invokes obligations arising from a defendant's particular status or relationships, or from legislation, beyond the generalized standards that the common law of negligence imposes on persons at large." 303 Or at 10. The court gave as examples *Chartrand v. Coos Bay Tavern*, 298 Or 689, 696 P2d 513 (1985), in which the plaintiff invoked the statutory standard of care defined by the liquor control laws, and *McEvoy v. Helikson*, 277 Or 781, 562 P2d 540 (1977), in which the plaintiff invoked a specific duty imposed on the defendant by a court order. 303 Or at 15. In *Fazzolari* itself, this court held that the public school had a

---

[6] In addition to arguing that there is a special *relationship* between insureds and insurance agencies, plaintiff appears to assert that a special *rule* already protects insureds in this situation and that *Fazzolari* suggests that this court will not abrogate preexisting special rules. We have no occasion to agree or disagree with plaintiff's interpretation of *Fazzolari* in this respect, because the premise of his argument fails. He relies on *Franklin v. Western Pac. Ins. Co.*, 243 Or 448, 414 P2d 343 (1966), for the proposition that there is a special rule here. As discussed above, however, this court has not previously considered whether, in an action against an agent for negligent failure to procure insurance, a defendant is entitled to allege that the plaintiff's failure to read the insurance policy after obtaining it contributed to the plaintiff's damages. That being so, plaintiff's contention that a special *rule* already governs the present question is incorrect.

"special duty arising from the relationship between educators and children entrusted to their care apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm." *Id.* at 19. That special duty derived from the "compulsory school attendance law, ORS 339.010 to 339.090, [which] virtually mandates that children be so entrusted to a school and, for most families, leaves little choice [as] to which school," *ibid.*, and from the unusual vulnerability of minors, *id.* at 19-20.

In the present case, plaintiff brought a claim of ordinary negligence, which is consistent with this court's precedent. In *Joseph Forest Products v. Pratt, supra*, this court considered the elements of a claim by an insured for negligent failure of an insurance agency to procure insurance. One of the questions presented was whether the insured was entitled to obtain any damages in addition to losses up to the limits of the policy for which the insured had applied. This court answered "yes." The opinion analyzed the question in traditional negligence terms and noted that the issues raised were ordinarily for the jury:

"Of course, in order to recover for additional, consequential damages, the plaintiff must prove that the additional losses were caused by the defendant and that these damages were reasonably foreseeable at the time of application. Issues of causation and foreseeability, however, go to the merits of plaintiff's case, and those questions cannot properly be resolved at the pleading stage through a motion to strike certain allegations of the complaint. Therefore, we conclude that the trial court erred in granting defendant's motion to strike those portions of plaintiff's complaint which related to consequential damages * * *." 278 Or at 481-82.

Plaintiff did not invoke a statutory relationship or statutory standard of care in this case.[7] Rather, he alleged that defendant's conduct unreasonably caused a foreseeable risk of harm to an interest of the kind for which plaintiff claims damages.

---

[7] We note that ORS 744.605 *et seq* provide for insurance advice from an insurance consultant, but this case does not involve an insurance consultant. *See also* ORS 744.165(1), which provides in part that "any person who solicits or procures an application for insurance shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured."

■ When a plaintiff brings a claim for negligence — unlike a claim for breach of contract, in which the concept of "fault" in the tort sense plays no role — the defendant is entitled to allege and to present evidence that the plaintiff was comparatively at fault.[8] If the defendant presents such evidence, then the defendant also is entitled to an appropriate instruction.

■ Although the relationship between plaintiff and defendant provides a context in which to decide whether the parties exercised reasonable care in the light of foreseeable risks, their relationship does not bar a defense of comparative fault as a matter of law. We do not conclude "that a reasonable response to a foreseeable injury would never include the acts which allegedly contributed to the plaintiff's injuries." *Dahl v. BMW, supra,* 304 Or at 564. Insureds and insurance policies are not all alike. Insureds range from unsophisticated individuals who know nothing about insurance, to experienced business persons knowledgeable about insurance, to large corporations with batteries of lawyers. The relevant provisions of the policy may be simple (the address of the insured premises, for example) or complex. A jury should be allowed to consider two questions: Under the relevant circumstances, was it unreasonable in the light of foreseeable risks for the insured not to read the policy? If so, did the insured's unreasonable failure to read the policy contribute to the insured's damages? In this case, the trial court's rulings prevented the jury from considering those issues and were, accordingly, erroneous.

Plaintiff next contends that any errors were harmless, because plaintiff satisfied his "duty to read his policy" when defendant's agent explained his coverage. Defendant's agent testified that, when he delivered the policy to plaintiff, he explained the coverage contained therein and provided a "resume of insurance." That resume lists plaintiff's employees, but not the lessor, as additional insureds. Plaintiff argues that, because his English language skills are limited, he could not be expected to read the policy, but only to ask

---

[8] *See Georgetown Realty v. The Home Ins. Co.,* 313 Or 97, 102-06, 831 P2d 7 (1992) (if the plaintiff brings a tort claim, tort statute of limitations and tort measure of damages apply; if the plaintiff brings a contract claim on the same underlying facts, contract statute of limitations and contract measure of damages apply).

someone else what it meant. There was no reason to ask for such a further explanation, he says, after the discussion with defendant's agent.

■  The facts to which plaintiff points are for the jury to consider, but they do not entitle plaintiff to prevail as a matter of law on defendant's proposed specification of comparative fault. The jury could have found that plaintiff did not act reasonably in failing to read the insurance policy after receiving a brief summary of it, or in failing to ask someone else with better language skills to read it,[9] and on that ground could have found additional fault on the part of plaintiff.[10] Thus, the error in striking defendant's third allegation of comparative fault was not harmless.

■  Neither was the trial court's erroneous instruction harmless. For an instruction to constitute reversible error, it must have prejudiced the aggrieved party when the instructions are considered as a whole. *Hansen v. Bussman,* 274 Or 757, 781, 549 P2d 1265 (1976); *Waterway Terminals v. P.S. Lord,* 256 Or 361, 370, 474 P2d 309 (1970).

■  Plaintiff argues that the disputed instruction was favorable to defendant, because it advised the jury, "should the Plaintiff be apprised of the contents of his insurance policy, Plaintiff may not necessarily avoid responsibility for his own actions or inactions that may have * * * caused or contributed to his own damages." Plaintiff ignores the remainder of the instruction, which told the jury that "the Plaintiff had no duty in this case to read the insurance policy. The Plaintiff had a right to rely upon the superior expertise of Defendant's agent and had the right to assume that the Defendant's agent performed that duty." Read as a whole, the instruction told the jury that plaintiff *might* be responsible for his damages had he been notified of what was in the policy, but that he *could not,* as a matter of law, be found responsible for any of his damages had he failed to read the policy to find out what was in it. The last sentence of the

---

[9] There was evidence, for example, that plaintiff's lawyer, who had drafted the lease, also received a copy of the insurance policy.

[10] Plaintiff does not argue that the proposed third specification of comparative fault duplicated either of the two specifications of comparative fault that the jury was permitted to consider and that led to the jury's finding that plaintiff was 30 percent at fault.

instruction did not make the error in the first two sentences harmless. Defendant was prejudiced, because the instruction told the jury not to consider plaintiff's failure to read the policy, when there was evidence from which the jury could have found that plaintiff was negligent in failing to do so.

We hold that the trial court committed reversible error when it struck defendant's specification of comparative fault alleging that plaintiff failed to read the insurance policy after obtaining the policy from defendant and when it instructed the jury not to consider plaintiff's failure to read the insurance policy in assessing his comparative fault. Accordingly, we reverse and remand. Because they are likely to arise on remand, we reach two additional issues.

Defendant challenges the trial court's refusal to give its requested instruction No. 16:

"An insurance agent ordinarily has no affirmative duty to give advice concerning the particular insurance needs of his customer. However, an insurance agent may assume this additional duty by either (1) expressly agreeing to provide such advice, or (2) through a course of dealing with his customer whereby the customer comes to reasonably expect and rely on the agent to provide him with advice regarding his or her particular insurance needs.

"Whether or not this additional duty has been assumed by the agency will depend upon the particular relationship between the parties in any given case."

■ Refusal to give that instruction was not error. We agree with plaintiff that this is not a "duty to advise" case. The pertinent allegations of negligence against defendant were "failing to properly investigate Plaintiff's liability insurance requirements," "failing to review the previous policy," "failing to review the lease," and failing to provide adequate insurance that would have included the lessor as an additional insured. In other words, plaintiff alleged that he gave defendant the information necessary to determine defendant's needs but that defendant did not review the information and acquire the requisite insurance. Plaintiff did not allege that defendant should have *informed* him about the type of coverage that he ought to obtain. Rather, plaintiff alleged that defendant should have *provided* the necessary insurance.

Finally, defendant assigns as error the trial court's refusal to give its requested instruction No. 17:

"An insurance agent is not negligent merely because the insurance coverage requested by the plaintiff turned out to be inadequate to meet his or her needs. An insurance agent is not a guarantor of the adequacy of the coverage he obtained at the request of his customer."

The trial court did not err in refusing to give that instruction. Plaintiff did not claim that defendant was negligent "merely because the insurance coverage requested by the plaintiff turned out to be inadequate," nor did plaintiff seek to hold defendant liable as a guarantor. Plaintiff alleged, and provided evidence, that defendant was negligent in not including the lessor as an additional insured on the restaurant's liability insurance policy, when he had given defendant the pertinent information. Moreover, the requested instruction would have told the jury what is *not* the law. Although it may be appropriate to tell the jury what is *not* the law in some cases, "[o]rdinarily, if a jury is correctly instructed on those elements that it must find in order to reach an affirmative conclusion, a court need not go further and submit the opposing side's version of various circumstances that would *not* suffice to reach the disputed conclusion." *Hall v. The May Dept. Stores*, 292 Or 131, 143-44, 637 P2d 126 (1981) (emphasis in original).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.