2222

Linda KELLY, Respondent v. SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

(450 S.E. (2d) 59)

Court of Appeals

*Louis D. Nettles* and *Clifford C. McBride,* both of *Nettles & Nettles,* Florence, *for appellant.*

*J. Michael Baxley* and *W. Carole Holloway,* both of *Driggers & Baxley,* Hartsville, *for respondent.*

Heard Jan. 12, 1994.

Decided Sept. 6, 1994; Reh. Den. Nov. 4, 1994.

HOWELL, Chief Judge:

Linda Kelly sued South Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) for breach of a homeowners' insurance policy and for negligent misrepresentation by Farm Bureau's agent in describing the coverage under the policy. The jury found for Farm Bureau on the contract claim and for Kelly on her negligent misrepresentation claim. Farm Bureau appeals. We affirm.

In ruling on a directed verdict motion, it is the duty of the court to view the evidence in the light most favorable to the nonmoving party. *Stokes v. Denmark Emergency Medical Servs.,* — S.C. —, 433 S.E. (2d) 850 (1993).

Viewed in this manner the record reveals the following facts.

Kelly and her husband built their home in Darlington County in 1973. At the time a red storage building and a white storage building were on the property. At one time these buildings were used for the Kelly's farm, but Kelly did not farm after her husband's death.

After Mr. Kelly's death, Kelly decided to shop for better insurance rates. She purchased her homeowners' insurance from Nationwide and her automobile insurance from Farm Bureau. The Nationwide policy provided coverage for the storage buildings as "appurtenant structures" with full replacement cost insurance.

In 1987, Kelly went to Farm Bureau's office to discuss her automobile coverage with her agent, Ralph James. James asked Kelly about her homeowners' insurance and offered to give her a quote on a premium for coverage from Farm Bureau. Prior to the renewal date for the Nationwide policy James visited Kelly's home and discussed homeowners' coverage with her. Kelly told James she desired the same coverage she had under the Nationwide policy. James asked Kelly about the use of the storage buildings and she informed him the buildings were for her personal use. James inspected the buildings and their contents and advised Kelly that the Farm Bureau policy would cover the buildings as "appurtenant structures" so long as Kelly did not use the buildings for farming. He told her she could not use the buildings for any other purpose than in connection with her residence. James did not discuss with Kelly any other coverages necessary for her to have coverage on the buildings. Kelly decided to purchase the coverage from Farm Bureau.

Kelly received the Farm Bureau policy and declarations page in the mail. The declarations page indicated part of her premium paid for coverage for "appurtenant structures" in the amount of $9,910. Kelly saw this and understood it to mean she had coverage for the outbuildings. Kelly did not have a garage or other structure to which this declaration could have referred. The policy outlined the property coverage for "other structures" and contained the following exclusion:

We do not cover:

\* \* \* \* \* \*

2. farm barns or outbuildings used, intended for use as, or formerly used as farm barns or outbuildings. . . .

Kelly did not read the Farm Bureau policy and was not aware of this exclusion. She could have read the policy and would have easily understood the exclusion had she done so. She would have also understood that the storage buildings were not covered. Kelly testified that she did not feel it was necessary to read the policy because she had explained to James the coverage that she needed (i.e., the same as that under the Nationwide policy) and she relied upon what James told her regarding the exclusion.

In September 1989, Hurricane Hugo damaged both storage buildings. At the time of the storm, Kelly was not using the buildings for farming or for any business purpose. She was using the buildings for storage of personal items in connection with her residence. The storm damaged the white building and totally destroyed the red building.

Kelly reported the loss to Farm Bureau. Farm Bureau denied the claim for damage to the storage buildings pursuant to the farm building exclusion. James had not told Kelly that the exclusion applied to buildings intended for use or that had been used as farm barns or outbuildings. Kelly was not aware of the extent of the exclusion until Farm Bureau's adjuster, Steve Grabow, showed her the exclusion.

Kelly repaired the white building and had the red building removed at her own expense. Fred Beasley, a building contractor, estimated the red building could be rebuilt for about $19,800.

Kelly then brought this action. She alleged, among other things, that Farm Bureau breached its contract of insurance with her, that Farm Bureau was negligent in informing her that the structures were insured when they were not, and that Farm Bureau's actions constituted fraud which she justifiably relied upon to her detriment. At trial upon Kelly's motion, the court permitted her to amend her pleadings to conform to the proof so as to allege a cause of action for negligent misrepresentation. Following the denial of timely motions for directed verdict, the court submitted the case to the jury on the theories of breach of contract and negligent misrepresentation. The jury found for Farm Bureau on the breach of con-

tract claim, and awarded Kelly $18,000 for negligent misrepresentation. This appeal follows.

Farm Bureau argues the trial court erred in allowing Kelly to amend her complaint to allege a cause of action for negligent misrepresentation. Farm Bureau claims there was no evidence of justifiable reliance since Kelly admitted she did not read her policy, although she could have done so. Hence, Farm Bureau claims, the trial court abused its discretion in allowing the amendment to conform to the evidence. We disagree.

The circuit court is to freely grant leave to amend when justice requires and there is no prejudice to any other party. Rule 15, SCRCP; *Foggie v. CSX Transp., Inc.,* — S.C. —, 431 S.E. (2d) 587 (1993). A motion to amend is addressed to the sound discretion of the trial judge, and the party opposing the motion has the burden of establishing prejudice. *Id.* Further, where issues are not raised by the pleadings but are tried by consent, amendments to the pleadings are desirable because they bring the pleadings in line with the issues actually developed at the trial. *Sunvillas Homeowners Ass'n., Inc. v. Square D Co.,* 301 S.C. 330, 391 S.E. (2d) 868 (Ct. App. 1990). Amendments to conform to the proof should be liberally allowed when no prejudice to the opposing party will result. *Soil & Material Eng'rs, Inc. v. Folly Assoc.,* 293 S.C. 498, 361 S.E. (2d) 779 (Ct. App. 1987). This decision is within the trial court's discretion. *Id.* We have reviewed the record and arguments before us and find no abuse of discretion.

Farm Bureau also argues the trial court erred in refusing its directed verdict motion on the negligent misrepresentation claim because Kelly did not present proof as to each element of the cause of action. Farm Bureau claims there is no evidence of justifiable reliance, since Kelly admitted that she did not read her policy and would have understood that she did not have coverage had she done so. We disagree.

A duty to exercise reasonable care in the giving of information may arise when the defendant has a pecuniary interest in the transaction. *Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E. (2d) 577 (1990). To state a claim for negligent misrepresentation, the plaintiff must allege: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making

the statement; (3) The defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) The defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation. *Fields v. The Melrose Limited Partnership,* — S.C. —, 439 S.E. (2d) 283, 285 (Ct. App. 1993); *AMA Management Corp. v. Strasburger,* 309 S.C. 213, 420 S.E. (2d) 868 (Ct. App. 1992).[1] The only element at issue in this case is the fifth element, that is, whether Kelly justifiably relied on the alleged misrepresentation. Farm Bureau argues her failure to read the policy precludes her from claiming justifiable reliance upon anything James told her, under *Doub v. Weathersby-Breeland Ins. Agency,* 268 S.C. 319, 233 S.E. (2d) 111 (1977). We disagree.

In *Doub,* the plaintiff conceded the exclusion in the case was valid and brought an action for fraud and misrepresentation against the insurer. The plaintiff admitted that he never read the policy, but stated that if he had he would not have understood the scope of the exclusion. The insurer moved for a directed verdict on two grounds: (1) plaintiff had no right to rely on oral misrepresentation as to the coverage when the written terms were in his possession and available to him; and (2) there was no evidence of a detrimental change of position in reliance on those misrepresentations. The Supreme Court noted that

> [O]ne cannot complain of fraud in the misrepresentation of the contents of a written instrument in his possession

---

[1] Closely akin to negligent misrepresentation in the context of this case is the cause of action against an insurance agent or broker for negligent procurement of represented insurance coverage. In *Sullivan Co., Inc. v. New Swirl, Inc.,* — S.C. —, —, 437 S.E. (2d) 30, 31 (1993), the Supreme Court stated:

> [A]n insurance agent or broker must exercise good faith, reasonable skill, care and diligence. If, because of his fault or neglect, the agent fails to procure insurance, or does not follow instructions, or the policy issued is void, or materially deficient, or does not provide the coverage he undertook to supply, the agent is liable to his principal. *Riddle-Duckworth, Inc. v. Sullivan,* 253 S.C. 411, 171 S.E. (2d) 486 (1969).

In this case, James clearly failed to exercise reasonable skill, care and diligence in procuring the coverage Kelly requested. However, Kelly did not state her claim against Farm Bureau in this fashion.

when the truth could have been ascertained by reading the instrument. One entering into a contract should read it and avail himself of every reasonable opportunity to understand its contents and meaning.

233 S.E. (2d) at 114. The Court noted further

Here, plaintiff had eighteen months to inform himself as to the terms, conditions and exclusions in the written contract to which he was a party. He made no effort to do so, and never read the contract. The facts here are entirely different and distinguishable from those in *Riddle-Duckworth, Inc. v. Sullivan,* 253 S.C. 411, 171 S.E. (2d) 486 (1969), where the insured had read the policy contract, had not understood the coverage on certain items, including the elevator, and had specifically asked if the operation of the elevator was covered, to which the defendant agent, an experienced insurance agent, had replied that it was. Here, plaintiff never read his policy and **made no inquiries as to any of its specific terms and provisions,** and continued to ignore the written instrument for eighteen months.

*Id.* (emphasis ours). Unlike the plaintiff in *Doub,* Kelly in fact made specific inquiries of James, her agent, as to the specific terms and provisions of her policy, and reasonably relied upon her agent whom she trusted to provide her with the same coverage she enjoyed under the Nationwide policy. *See Riddle-Duckworth, Inc. v. Sullivan,* 253 S.C. 411, 423-24, 171 S.E. (2d) 486, 492 (1969) ("[w]hile an insured cannot abandon all care, the rules which require one to inform himself of the terms of his contract and to take precautions for his own protection are less exacting when dealing with one's own insurance agent or broker in the procurement of an insurance contract").

Furthermore, Farm Bureau accepted a premium to provide coverage for "appurtenant structures" and its declarations page on the policy reflected such coverage. Kelly's "barns" were the only structures Kelly had on her property apart from her home. Farm Bureau's acceptance of the premium for this coverage estops it from claiming, after a loss, that no coverage exists. *See Elias v. Firemen's Ins. Co. of Newark, N.J.,* 309 S.C. 129, 420 S.E. (2d) 504 (1992) (the

payment and acceptance of insurance premiums creates a contract of insurance); *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 415 S.E. (2d) 393 (1992) (a layperson who pays a premium at the time an application for insurance is filed is justified in assuming payment will bring immediate protection; circumstances may imply acceptance of an offer to purchase insurance). *Cf. South Carolina Ins. Co. v. Price*, — S.C. —, 432 S.E. (2d) 508 (Ct. App. 1993) (where an insurer received a premium for particular coverage, it would not be heard to question the policy regarding who was the named insured under the policy); and *Bell v. Senn Trucking Co. of Newberry, S.C.*, 308 S.C. 364, 418 S.E. (2d) 310 (1992) (a Georgia workers' compensation insurer who accepted a premium for coverage based upon employee salaries, including those employed in South Carolina, would not be heard to object on the basis that certain benefits sought by the South Carolina claimants were not "covered claims").

Accordingly, the judgment is

Affirmed.

SHAW and CURETON, JJ., concur.